David A. SEITZ and Thomas Rocco, On Behalf of Themselves, and On Behalf of The Pension Plan of The Brewery Workers Pension Fund, Or, Alternatively, On Behalf of All Other Persons Similarly Situated, and Dorothy Casey, On Behalf of the Estate of Patrick F. Casey, and On Behalf of The Pension Plan of The Brewery Workers Pension Fund, Or, Alternatively, On Behalf of All Other Persons Similarly Situated, Plaintiffs,

v.

The BOARD OF TRUSTEES OF THE PENSION PLAN OF THE NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, Defendant.

No. 94 Civ. 5164 (DAB).

United States District Court, S.D. New York.

Feb. 12, 1997.

Legal Services for the Elderly, New York City (Edgar Pauk, of counsel), Martin & Bonnett, P.L.L.C., Phoenix, AZ (Susan Martin, of counsel), for Plaintiffs.

Paravati, Karl, Green & DeBella, Utica, NY (Vincent M. DeBella, of counsel), for Defendant.

### MEMORANDUM and ORDER

BATTS, District Judge.

Plaintiffs, David A. Seitz, Thomas Rocco and Dorothy Casey have filed this suit for pension benefits, declaratory judgment and injunctive relief, both on their own behalf and on behalf of The Pension Plan of the Brewery Workers Pension Fund, or alternatively as a class action, against The Board of Trustees of the Pension Plan of The New York State Teamsters Conference Pension and Retirement Fund ("Defendant"). Defendant now moves to dismiss on the grounds of improper venue, or in the alternative, transferred to the United States District Court for the Northern District of New York, together with costs and attorneys fees.

### I. BACKGROUND

On July 13, 1994, David A. Seitz, Thomas Rocco and Dorothy Casey filed suit in this Court seeking payment of pension plan benefits from the Defendant. (Am.Compl. ¶ 1.) The claims of the three named Plaintiffs arise from their affiliation with The Brewery Workers Pension Fund, (the "Brewery Plan"), an employee pension benefit plan for brewery workers under ERISA,[1] that is currently administered by the Defendant. (Am. Compl. ¶¶ 10–12.) Specifically, Plaintiffs Seitz and Rocco are retired brewery workers and participants in the Brewery Plan, and Plaintiff Casey is the widow and proposed estate administrator of Patrick F. Casey, a retired brewery worker and participant in the Brewery Plan. (Am.Compl. ¶¶ 13–14.)

Plaintiffs seek to recover pension benefits from the New York State Teamsters Conference Pension and Retirement Fund ("the Teamsters Plan"), also currently administered by the Defendant. (Am.Compl. ¶ 15.)

Plaintiffs seek to enjoin the Defendant to comply with the terms of a 1973 Merger Agreement (the "Agreement"), (Am.Compl. ¶¶ 2, 16), which provided that active participants in the Brewery Plan on or after the effective date of the Merger, could elect to receive pension benefits under either the Brewery Plan or the Teamsters Plan. (Am. Compl. ¶¶ 2, 17–21.) The Agreement took effect years later and Plaintiffs claim that this delay was due to the Defendant's "contumacious conduct." (Am.Compl. ¶¶ 2–4, 24–28.) As such, Plaintiffs claim that the Merger Agreement should have become effective either in 1973 or alternatively in 1974. (Am. Compl. ¶¶ 4–5.) In this way, Plaintiffs could claim the better pension benefits provided by the Teamsters Plan, even though David Seitz, Thomas Rocco and Patrick Casey retired[2] before the Agreement's current December 1976 effective date. (Am.Compl. ¶¶ 51, 60, 62.)

Today, Plaintiffs Rocco and Casey reside separately in Brooklyn, New York, while Plaintiff Seitz resides in Orlando, Florida. (Am.Compl. ¶¶ 13–14.) Defendant maintains its offices in Utica, New York. (Am.Compl. ¶ 15.)

### II. DISCUSSION

Defendant relies principally on ERISA venue provisions and a forum selection clause in the Teamsters Plan to support its motion for dismissal of this action on the grounds of improper venue or in the alternative, for transfer of this action to the United States District Court for the Northern District of New York.

---

[1]. "ERISA" is an acronym for the Employee Retirement Income Security Act of 1974. Specifically, the Plan at issue is a employee pension benefit plan within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A) and more particularly, a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). (Am.Compl. ¶ 10.)

[2]. While not relevant to this motion, there are several distinct facts pertaining specifically to David A. Seitz and his retirement. They are set forth in the Amended Complaint ¶¶ 45–59.

## A. Venue Under ERISA

The ERISA venue provision upon which the Defendant relies,[3] states in relevant part:

Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the Plan is administered, where the breach took place, or where the Defendant resides or may be found. . . .

29 U.S.C. § 1132(e)(2).

As to the first ERISA factor, Plaintiffs concede that the "Plan" at issue in this motion is "administered" in Utica, New York. (Am.Compl. ¶ 15.) As to the second ERISA factor, the alleged breach "took place" in Utica because that is where all pension benefit claims are processed. (DeBella Aff. ¶¶ 6, 18.)

As to the third and fourth factors, Utica is both where the Defendant resides and can be found. However, in a widely followed case, *Varsic v. United States Dist. Court*, the Ninth Circuit rejected the notion that a Section 1332(e)(2) Defendant may be "found" solely where it administers the Plan in question. 607 F.2d 245, 248 (9th Cir.1979).

Reasoning that Congress did not intend each of the four factors "to require essentially the same factual basis, i.e. where the Fund is administered" the *Varsic* Court held that the word "found" is to be interpreted liberally. *Id.* at 248. To this end, the *Varsic* Court concluded that a "minimum contacts" test used to determine whether a court has personal jurisdiction, (as set forth by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)), determined whether a defendant was "found" in a specific forum. *Varsic*, 607 F.2d at 248–49.

■ The *Varsic* court also articulated a three-part test for establishing whether the quality and nature of a defendant's activities are such that it would be "reasonable and fair" to require the Defendant to defend himself in a specific forum and accordingly whether venue is proper: 1) defendant must have performed some act or transaction by which he purposely avails himself of the privilege of conducting activities in the forum; 2)

the claim must be one which arises out of or results from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable. *Id.* at 249. Furthermore, in New York, courts look to several factors to determine whether they have personal jurisdiction over a corporate defendant, including the "maintenance of bank accounts and other property" in New York; the presence of employees in New York; the existence of an office in New York; and the solicitation of business in New York. *Fischer v. Enterprise Rent–A–Car Co.*, Nos. CV–95–4876, CV–95–4938, 1996 WL 251426 (E.D.N.Y. Apr. 24, 1996).

■ As to the Defendant's conduct in the Southern District, the Defendant has stated:

[U]pon information and belief, the Pension Fund has had contributing employers and retirees who receive benefit checks in the Southern District of New York since August 7, 1973.

(Pauk Aff. Ex. 6.) The Court finds that the fact that there are or were contributing employers and retirees receiving benefits in this district, other than the Plaintiffs, is not sufficient to satisfy the minimum contacts test nor the three prong test set by the *Varsic* Court. Furthermore, the Plaintiff has not advanced any evidence of bank accounts, offices or employees of the Defendant in the Southern District. Accordingly, the Defendant is not "found" in the Southern District. *See Varsic*, 607 F.2d 245; *I.A.M. Nat'l Pension Fund v. Wakefield Indus.*, 699 F.2d 1254, 1257 (D.C.Cir.1983); *Launer v. Buena Vista Winery, Inc.*, 916 F.Supp. 204, 212 (E.D.N.Y.1996); *Economu v. Borg Warner Corp.*, No. H–84–1320, 1985 WL 4575 (D.Conn. Oct. 3, 1985).

First, the alleged activities are not "substantial," "continuous" or "systematic." Accordingly, the Court will apply the *Varsic* test. Although it may be said that these contacts can be considered an "act" done in this district for which Defendant would avail itself of the protections of this district, the claims here do not arise from the district-related activities. The employers who con-

---

**3.** Defendant also notes a second ERISA provision, 29 U.S.C. § 1451(d), which relates to actions by employers seeking withdrawal liability.

The claims here do not relate to withdrawal liability. Accordingly, the Court will not address 29 U.S.C. § 1451(d).

tributed funds or the retirees who received benefits in the Southern District are not at issue here. The Court also finds it is unreasonable to proceed in the Southern District in light of the minimal acts that occurred here and the location of the Defendant. Accordingly, the Court finds the Defendant is not found in the Southern District.

### B. Transfer to Another District

■ However, the Court will transfer this case rather than dismiss, it. 28 U.S.C. § 1406.[4] The Plaintiffs request that it be transferred to the Eastern District whereas the Defendant requests that it be transferred to the Northern District.

Plaintiffs worked, lived and earned their benefits in the Eastern District. (Pauk Aff. ¶¶ 15–17.) Furthermore, their employer, located in the Eastern District, made contributions to the Fund. (*Id.*) Accordingly, these facts cure the Court's concern with prong two of the *Varsic* test. The Court finds that the Plan may be found in the Eastern District and the current cause of action could have been brought in that district at the outset of the case. However, this issue comes to the Court on the Defendant's motion and it requests transfer to an equally plausible situs. Plaintiffs will not be afforded a second chance at choosing an appropriate venue. Furthermore, the Northern District of New York is the venue that is most convenient, in that the Defendant is located there and all the witnesses and documents relevant to the administration of the Plan are located there. The Court finds it is the more reasonable forum, and in its discretion will transfer venue to the Northern District of New York.

### III. CONCLUSION

Defendant's motion to transfer to the Northern District of New York is GRANTED.

SO ORDERED.

---

4. 28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to a district or division in which it could have been brought."